# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 10, 2024

Lyle W. Cayce
Clerk

No. 21-60941

Yeni Eceny Platino-Bargas,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Appeal from the Board of Immigration Appeals
Agency No. A216 931 864

Before Davis, Graves, and Wilson, *Circuit Judges*.

Per Curiam:[*]

After reviewing the record, briefs of the parties, and previously filed joint motion of the Government and Petitioner to remand, we grant the motion to remand this case to the Board of Immigration Appeals (BIA) for further consideration as outlined below.

Following a hearing, the Immigration Judge (IJ) denied Petitioner's application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). The BIA dismissed

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60941

Petitioner's appeal generally agreeing with the IJ's conclusions and later dismissed Petitioner's motion to reopen based on her claim of ineffective assistance of counsel.

The unopposed motion of the Government and Petitioner for remand explains in detail the issues the BIA should reconsider and provide additional explanation where necessary. We outline those issues below.

The IJ denied Petitioner's application for asylum in part because Petitioner failed to demonstrate that she was persecuted because of her race and therefore did not qualify as a "refugee" based on past persecution on a protected ground. This finding was made despite Petitioner's testimony of widespread prejudice and mistreatment of her indigenous Miskito minority community and despite Petitioner's testimony that her abusers repeatedly made racial or ethnic slurs as they were beating and raping her. The persecutors also berated her for her association with MASTA, a Miskito human-rights organization actively working to prevent the corrupt police and others from extorting land from her minority community.

Petitioner testified to assisting MASTA, along with her father and brother, for five years before a group of five police officers kidnapped, battered, and raped her. Petitioner attempted to report her attack to the police, but they refused to file a report and berated her with racial slurs. This evidence provided additional support for Petitioner's position that the other officers who harmed her did so on account of her race.

Around the same time Petitioner was kidnapped and tortured, her brother had also been kidnapped and tortured because of his participation in MASTA activities. The police who seized her brother chopped off his finger and threatened to torture him if he continued to assist MASTA. Petitioner testified that the reason the men kidnapped her was because they identified her with her father and brother. As the IJ recognized, this group had

previously extorted her father and brother for refusing to pay money to them or to turn over the father's property and house to them.

The IJ accepted Petitioner's testimony "that the national police extorted other indigenous landowners[]" but concluded that "there is no indication that being indigenous was the motivation for [Petitioner's] persecution." The IJ determined that the only central reason for Petitioner's abuse, rape, and beating was the police's extortion of her family. Despite the considerable evidence of mixed motives for Petitioner's persecution, the IJ found that "the record lacks evidence that her race was a central reason for [her] assault or that the police officers extorted her family due to their race." The BIA summarized and implicitly affirmed this finding without further explanation or consideration whether the record compels the contrary finding that her indigenous identity was also a central reason in light of the uncontradicted testimony of Petitioner—which the IJ credited.[1]

Both parties have broadly attacked the adequacy of the BIA's decision. We agree with the parties' unopposed view that a remand to the BIA for clarification of its analysis is warranted. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))); *see also Argueta-Hernandez v. Garland*, 87 F.4th 698, 712 (5th Cir. 2023) (remanding to BIA to "clarify its analysis").

---

[1] "[T]he BIA recognizes actionable mixed motive cases, where persecutors may have legitimate reasons for their actions, but an additional central reason for their actions is persecution on account of a protected category." *Sealed Petitioner v. Sealed Respondent*, 829 F.3d 379, 383 (5th Cir. 2016) (remanding to BIA for consideration of mixed motives); *see Argueta-Hernandez v. Garland*, 87 F.4th 698, 712 (5th Cir. 2023) (instructing BIA on remand that it "should bear in mind that persecutors may have multiple motives . . . acknowledge that extortion may, in certain circumstances, not destroy a petitioner's claim where other facts establish nexus").

On remand, the BIA should explain and clarify whether the record supports the IJ's finding that the only central reason Petitioner's persecutors attacked her was to further their criminal enterprise of financial gain. Further, if, on remand, the BIA finds Petitioner is a "refugee," the BIA should determine whether Petitioner or DHS bears the burden of establishing the reasonableness of her relocation within Honduras and whether that burden was carried. *See Orlando Ventura*, 537 U.S. at 17 (encouraging courts to "giv[e] the BIA the opportunity to address the matter in the first instance in light of its own expertise"). We forecast no opinion on the merits of these issues on remand.

For these reasons, we GRANT the unopposed motion to remand this case to the BIA for further proceedings consistent with this opinion.